Per curiam

Guardianship in socage was a consequence of socage «enure, and dependerá opon the existence of that tenure ; where there is no such tenure, there is no such guardianship, strictly speaking; though it may be *ery proper to pay some attention to the rule, in the appointment of guardians, as it is calculated to prevent the orphan from falling into hands, where, he could not with safety be trusted. In like manner, as «here the ancestor died seised of an inheritance that lay not in tenure, it is held as a rule, that the, next of kin to whom the inheritance cannot descend, should have the custody of him, Co. Lilt. 87 b. As all our lands are now allodial, the rules cited at the bar on either side, are not strictly obligatory on the court. The ac« of 1762, concerning «he management of orphans and their estates, was passed at a time when the lands of this country were held by socage tenure, and from thence that act may be supposed to have been framed, with a view to the rules relative to guardianship in socage. That supposition will vanish, if if be considered in how many materia! points the guardianship established by that act differs from «he guardianship in socage — the guardianship in socage needed not the appointment of any court; the person entitled to be guardian was as precisely marked out by law, and as well entitled by it, as the heir at law himself — where there were two or more iu equal degree of kindred, to whom the inheritance could not descend, the law gave a rule of de-cisi'>n not by saying they should apply ti? a court for the appointment of the. one or the other, but by saying that he who could first get possession of the heir should have the guardianship of him. When the ancestor died seised of lands, part of which descended on the orphan’s death to relations on the father’s side, and part to relations on the m-dber’s side, in that Case although the heir must fall into the- possession of some person, liable to the tempt»-' *353 tíoii meant to be avoided by the rule, no court was called upon ¿o appoint a guardian not liable io fha* objection, but. stich of the next of kin as could first* gm possession of the heir, should have the custody of his person, and the kindred on either side might enter as guardian on the possession of 4he lands that could not descend to them. Co. Litt. 88 a & b. This proves that the guardian in socage derh ed his appointment and authority from the law immediately, without the intervention óf a court; and he might enter immediately on the death of the ancestor upon the lands descended to the orphan, and aiso might immediately take possession of the ward : but the act of 1762. manifestly intended that no person should interfere with either, but in consequence of the appointment of the County or Superior Court ; and that no person should receive the appointment, unless he gave security .as the act requires — this was «circumstance not required in the socage guardianship. If the act had intended (hat a person designated by law, should be entitled to the guardianship, ii would have been useless to have vested the power of appointing him in tbe County or Superior Court: their appointment of a person already appointed bylaw, would be at least a redundant, if not an absurd act. The socage guardian could not interfere with any part of the ward’s property but his lands held by socage tenure, not with his copyhold lands and the like — and not' with any part of his personal estate; by ibis act he is intrusted with the whole. 'State of his ward of every kind. In England it was usual for the O-diaary to appoint a guardian over the body and personal esrate where Hiere Was no land held by socage tenure. Wood’s Inst. 68. L. Ray. 1834. The art of 1762, consolidates theguaruianship of the body, lands and personal estate, and vests the appointment of a proper guardian in the County or Superior Court. When personal property came to be coe-ndcrable in E gland, the iucotivenieuce of the guardianship in socage began to be fell, arid was attempted to be remedied by the. act of 12 Car. 2, c. 24, allowing parents to appoint guardians to their <h?ldmi fill twenty-one. These testamentary guardians did not lose their authority by the ward’s arrival to the age of fourteen years, nor could they be displaced by the ward’s cimsuig 'another guardia»; at that age. These were some of the ' inconveniences experienced nnder the former law — or *354 phans of the tender age of fourteen, oftentimes made im penden' choices of guardians — these testamentary guard-iatis, however, like others, were liable to be removed by Chaucer), after the abolition of Hie court of wards in the beginning of the reign of Charles II. for misbehaviour in. their (rust; or for giving room to suspect they were about to marry their wards in disparagement. The act of 1763 adopts the same provisions amongst its first clauses | from whence there is reason to believe the Legislature were actuated by the same motives as the framers of the act of Charles — the act of 1762 evidently contemplates, that the guardianship committed by the court, should be of the same Ouraüon as that made by the appointment of a parent, namely, to the age of 21; for the 11th, 12th and 13th sections give directions about preserving the estates of orphans, and leasing out their lands till they arrive to the age of 21. This act therefore cannot have a regard to the old law relating to guardianship, hut. meant to alter it entirely — it. gives the court power to appoint till the ward came to age, such per on as they may think proper to be his guardian, wiih authority to remove him whenever he misbehaves in the trust they have committed to him. This is a much more effectual mode of procuring proper guardians, and of keeping them steadily to their duty, than if the court were obliged to appoint the next of kin, to whom the inheritance could not descend, who in numerous instances might be very unfit persons $ as the court have a discretional power of chusing the most proper person, they should make their election of that person who can best attend to the affairs of the orphan, and whom they have reason to believe will attend to them with the greatest advantage and most fidelity to the orphan. Mr. McAllister is stated to live at the distance of four or five hundred miles, in another Slate — should he be appointed he must either carry the ward with him to his place of residence, where rhe court cannot from time to time be informed of his treatment, or be must leave the ward in the possession of some agent, instead of attending to the charge of his education himself: add to this, that the estate of the ward must in like manner be committed to the management of an agent, or be greatly neglected. Mr. Mills resides on the spot, near to the orphan’s estate, and in the county where it fies j sheuId he mismanage either with respect to the pec- *355 Son or estate of the ward, intelligence may immediately be conveyed to ihe court, and bis misbehaviour corrected. Mr. Mills has in- prospect of ever succeeding to he ward’s estate, whereas Mr. McAllister has; and tho’ this is not a consideration absolutely obligatory in the court, they will run entirely disregard it — though they may appoint whoever they think most proper, even the next, of kin in the immediate line of succession, they will notout of prudence do this where the estate is large, and any other-person equally as well qualified offers or can be procured to take tin guardianship upon himself — tie* Court of Chancery in England always governs its discretion by this consideration, among others, though the contrary was once avowed in the case, of an application by Justice jDormer. There is also another circumstance in the present case, which hath been mentioned at the bar, and is not denied, that ought to have great weight — it ¡s stated that Mr. McAllister claims part of this very estate, the wardship of w i.ich he is now seeking. It is said in avoid-ant:- of ihfs objection, that the orphan upon his arrival at foui re.cn years, iiih; chose another guardian, and call him. to account for die profits ; but if we anpoiuf Mr. McM-lister, he will he entitled to the custody of the evid< rices of th- Plaintiff’s title to this estate — aad shall we give the custody of these evidences to the man whose interest it is, and who is so much concerned to suppress and conceal them ? Sutoly. Hie court would act a very imprudent part to do so. Wherelorp let Mr. Mills be appointed — ..nd he was appointed accordingly, and gave bond and sureties as the act requires.
Note — Tht County Court, in appointing a guarnían, need not regare t c ,icc of the infant, although he may be above 14 yeais of age Hynne v. Always, Conf. Rep 554. S. C. Hay. 336 S. C. 1 Murph 38. Bray’s orphans Brumsey, 1 Murph 227 Grant v. Whitaker, ibid. 231. See also Long v Rhymes, 2 Murph. 122.